We'll hear argument first this morning in Case 17-778, Quarles v. United States. Mr. Marwell. Mr. Chief Justice, and may it please the Court, for centuries the essence of burglary has been punishing those who trespass for the purpose of committing a crime. That was the rule of common law. It remained the majority view at the time of Acca and Taylor. For two main reasons, the Court should confirm that generic burglary retains that traditional requirement of contemporaneous intent, intent at the time of the initial trespass. First, the sources that matter under Taylor show that remaining in was understood as a modest expansion of the traditional offense, to cover those who entered lawfully but then overstay their welcome to commit a crime. But the government reads Taylor's use of that one word, remaining in, as a sharp break from that tradition. Under that view, remaining would cover anyone who enters unlawfully, regardless of whether they had that burglary as intent at the time of entry, as long as the intent was formed later. And nothing in Taylor or the sources that existed at the time of Acca suggests an intention or acknowledgment of making such a dramatic change. Well, something in Taylor tugs the other way. Ginsburg, that is, Taylor said that there would be few statutes that were broader than the generic, and that even in, what, 1986, there were more than a few statutes that are like the statute before us. Yes, Justice Ginsburg, the government claims there were six statutes as of or six States as of 1986 that had defined remaining in burglary more broadly than our definition. I think that's well below the threshold, and, in fact, Taylor contemplated that there would be a few. It gave the example of California, in which shoplifting qualified as burglary. I thought it was higher. I thought it was somewhere between 9 and 14. Well, the government claims six statutes. There were 29 statutes as of 29 jurisdictions as of 1986 that had remaining invariants, but I think when you look at how the States had interpreted those, and in some cases at the plain language of the statutes, I think the best reading of where those States were, it shows that a majority, even of the remaining in States, retained the traditional requirement of contemporaneous. Alito, if we look at the statutes in existence in 1986, and we count only those in which there is a judicial opinion interpreting the statute on the remaining in question, and not those which contain dicta in cases involving where the — where there was an intent at the time of entry, what is the breakdown? Well, as you know, we think you should not only look at the remaining in. I know. You think we should look more broadly. You want us to count all the statutes in which there is no remaining in burglary to start out with. Correct. Okay. Because Taylor refers — Taylor instructs to look at how a majority of States define burglary. Well, we know that Taylor — that Taylor's definition of burglary includes remaining in, does it not? Correct. All right. So then why would we look at the statutes that don't have any remaining in element at all? Because the 22 jurisdictions that had just entry burglary show a widespread adherence to that traditional rule that you needed intent at the time of entry. And the government's rule, the government's interpretation of the Taylor test takes that away, because they say if you enter unlawfully without any intent at the time and you form intent later, that's burglary, and that's not consistent. That's much broader than the 22 entry States. But I think if I could respond to the question about just looking at the 29. There are States like Alaska, which has the Araby decision from 1985, New York, which has the Licata decision from 1971, Connecticut, which has the Belton decision from 1983, where the Court said that remaining in applies to a lawful entry followed by a subsequent formation of intent. And I take the point that may not be 100 percent on point with the question, but we think it forecloses the government's reading, again, because that preserves the requirement of intent at initial unlawful entry. There are also some statutes, Justice Alito, where the plain language of the statute we think supports our view. Maine had a statutory sentencing provision that said you can be punished not only for burglary, but also for the offense that you commit after entering or remaining. Maine had that entry or remaining statute. Kagan. Kagan. Kagan. Kagan. I guess what strikes me, Mr. Marwell, is that the distinction just wasn't, you know, it wasn't really present at that time, that now we can look and see how there really is a split on this question, but in 1986, there were so few cases or statutes that clearly made the distinction and put a State on one side or the other of it. And if that's the case, if the distinction wasn't salient, why would we assume that Congress meant to incorporate it into the burglary element? Well, I think the Court typically interprets statutes to assume some degree of continuity with what had come before, and here Taylor acknowledged the common law rule, and we have a number of authorities that suggest that this contemporaneous intent requirement was the essential thing that differentiated burglary from trespass. Sotomayor, what do you do with the surreptitiously definition that was in existence before 1986? How does that inform our analysis? So the Court said in Taylor that it was adopting a definition that was very close to the 1984 statute, which had the surreptitious. I think surreptitious helps us. It certainly indicates that remaining was not a continuous State in the sense that the government says it was, and I think surreptitiously, as our amicus explains, has a connotation of doing something for a fraudulent reason or staying past your welcome for the purpose of committing a crime. Justice Alito asked you what the line-up was of States that read it your way and the States that read it the government's way. You mentioned at least three or four that predated 1986 that read it your way. At 1986, how many States had opined in the government's way? The government has five where there were judicial decisions in Texas, which adopted a slightly different statutory language that made clear that it was covering anyone who was present in and then committed. I think in our blue brief, we cited 15 jurisdictions, 15 of the 29. But I think, again, if we look at the entry States, that gets us 22 as of 1986, and then we get over the hurdle of Taylor, which says 15 is a third of, not quite a third, a little less than a third of the States. Isn't that enough to say that that's what Congress had in mind? If Taylor says only a few would be excluded by its definition, that's a lot more than a few. Well, Taylor says you're trying to craft a generic burglary definition that aligns with how most States viewed it, viewed burglary at the time. And we think most States viewed burglary in our way. And so the government has a different reading. If you adopt our rule, it will exclude six jurisdictions as of 1986. And I think that's below the threshold. The Court has declined to read a statute in a way that might exclude ten jurisdictions. Sotomayor, I'm sorry. So what was the 15 that you were talking about? 15 are jurisdictions that read remaining in our way. Oh, I'm sorry. That's not the question I asked. Oh, I'm sorry. As of 1986, how many jurisdictions read it the government's way? Six. Six. Five using intermediate, mostly intermediate State court decisions, and one was Texas. What has — how large has that number grown since 1986? So the government cites 18 jurisdictions today. But we think this Court's decision in Castleman and Stokeling looks — when it asks the question of how many jurisdictions would be excluded, is looking to the time that Congress adopted the statute. And I think that makes sense. Otherwise, you are interpreting the word burglary in ACCA in 1986 to expand potentially in the future without any further congressional action. And that's why I think in Stokeling and Castleman, the Court said, we're looking to how many jurisdictions would be excluded as of 1986. The Lefebvre Treatise at the time said, far more common today is the burglary statute, which covers one who either enters or remains in the premises. This means, of course, that the requisite intent to commit a crime within need only exist at the time the defendant unlawfully remained within. So how do you respond to that contemporaneous evaluation of the law? So I think that language could support our rule or the government's rule potentially. But if you look at the rest of what Lefebvre said, Lefebvre — Well, let's just stick with that sentence. How could it — it said the intent need only exist at the time the defendant unlawfully remained within. And we think that remaining within refers to that point where somebody overstays their welcome. And I think you can see that by how Lefebvre discussed the other remaining in statutes. They said — the Lefebvre Treatise said, for instance, it gave one example of what the remaining statutes were intended to do, and it's the classic bank customer who comes into the bank while the bank is open and then stays on to steal the bank's money. That, I think, is the classic example of what States were trying to get at when they added the words remaining. But Lefebvre then talked about the Texas statute and said, Texas has a different — different words in its statute, and it says if you're present in and you commit a crime, then that's — that counts as burglary in Texas. And Lefebvre said that's — that was intended to fix potential concerns about proof that would exist in the remaining jurisdictions. Breyer. Is there any reason to think that the person who stays in the bank and then, ah, what a nice idea, I'll help myself to some money, is any of the less violent or — risk of violence or risk of — is there any less risk there than when he gets the idea that he's, ah, going into the bank two weeks earlier? Ah, yes. I think the — the existence of preformed intent, so somebody who comes to the bank with the advanced plan to commit another crime, ah, shows that they will be more resolute in their desire to accomplish that crime. It may result in them bringing a weapon because they know they're going to do that. And I think it aligns with this — with the fact that ACCA is governing career criminals, trying to select people who have that profit motive to do multiple, ah, crimes. And you look at the fact patterns of the cases that are really the point of disagreement between us and the government, you know, Gaines from the New York Court of Appeals, a homeless person who breaks into a warehouse to get out of the cold, ah, while he's in there decides to grab a jacket and is caught coming out. Ah, or the case of young people who break into a house not — not intending to steal something. This is the JNS case from Oregon. Take something while they're in there and caught on the way out. There are no — no people who think, well, I want to rob this bank. I'm a little worried about the noise if I break in. Or, I want to rob this bank. He thinks that when he's inside. Mike Watchman, Teller, who forgot to go out. I don't know if that exists. But, ah, I can't quite figure out. I'm sure there's some cases both ways, I would think. So, anybody ever look at that? Well, so Taylor, ah, Taylor referred to the risk of violence when somebody does an intrusion to commit a crime. And I think that's — that captures this idea of — of why we care about preformed intent. But part of our understanding of why burglary is a — is a risky crime is when the burglar meets somebody else, the victim, the police officer, whoever, and that person is not going to know when the criminal formed his intent. That's correct. But two — two points, Justice Kagan. One, if the government's position comes very close to saying that any time you are present somewhere where you're not supposed to be, there's that risk of a violent confrontation. And Congress did not use the word trespass in ACCA. It could have enumerated trespass. I think the government's position comes close to that. And then second, I — I do think there is, you know, a distinction from the — from the property owner's perspective of somebody who comes having preformed the intent to do something else, as opposed to the innocent rationales of somebody who's trespassing for — by assumption for — for doing something other than committing a crime. Is the offense we're concerned with here, his third-degree home invasion conviction in Michigan, anything like these cases that you've just described? In that case, as I understand it, he assaulted his girlfriend, and then — and this is what the judge said as the factual basis for his no-contest plea. The victim reported that Mr. Quarles broke in through a screen window and assaulted her while in the house. And the judge said, quote, we certainly can infer that he had an intent to commit an assault while he was entering. And this establishes that he did commit an assault while he was in the house. So the facts that you've recited, Justice Alito, I think would not be available to a sentencing court. That was a colloquy in the State court where Mr. Quarles pleaded no-contest, so he was not asked to confirm those facts. And I think that's why — Well, doesn't — doesn't the judge, in order to accept the no-contest plea, have to establish — be satisfied that there's a factual basis for the plea? I — well, in Michigan law, no-contest is — is acquiescing in the imposition of punishment, but not confirming or denying the facts. And I think under — So the judge doesn't have to be satisfied? We'll — we'll check it out. Under Michigan law, this is surprising to me. A judge can accept a no-contest plea without ascertaining that there's a factual basis for the plea? Even if so, I think under this Court — the way this Court said in Shepard and Mathis the kinds of facts that are available to the sentencing judge, those are limited to ones where the defendant confirmed the accuracy. But I think under — under the Court's categorical approach, what matters is the text of the Michigan statute, which is very broad. It's as broad as that Texas statute, because it says any time you're present in and you — and you commit. And if there's a concern about whether the question presented is presented, the government didn't raise that in its brief in opposition, and the Sixth Circuit very clearly engaged with the question of what remaining in. I mean — Taylor didn't say that the statute had to exactly correspond to generic burglary. It said substantially corresponds. That's right. But we think that the — the element here of contemporaneous intent is what's been called the most fundamental essence of burglary. So I think substantial — it's hard to say that it substantially corresponds if it's missing, you know, the core element. When you gave the number 6, did that exclude all the States with remaining in statutes that had not interpreted those statutes? That's correct. Well, the number 6, I think, was how many States at the time of ACCA had clearly adopted the government's reading, and the government says — identifies only 6. We think the other jurisdictions are most fairly read to have adopted our rule, especially when viewed in light of the background interpretive principles that you're going to assume a degree of continuity, and you're going to not assume that the States had completely reconfigured the offense of burglary just by adding a word remaining. Did that turn out to be the case, States that had remaining in statutes in 1986 and then interpreted them later? Well, some jurisdictions have gone towards the government's view. The government identifies 18 as of today. There are some jurisdictions that have adopted our view and 19 jurisdictions that have not adopted any remaining invariant and have stayed only defining burglary as intent at entry. So — Head count again? So if the question is what's the head count today — Yes. — 19 States retain the intent at entry, so entry only. Three States have remaining statutes, and they have adopted our rule. Eighteen States, the government has identified today as adopting their rule, and I think that leaves 11. That gets us to 51 jurisdictions where the government implicitly says they haven't resolved the question. The 18 States that the government says have their rule, do they have other burglary statutes, or would we be essentially removing the only burglary statutes of those States? So focused on today's laws. That's going to depend on how the States have treated the statutes. We cited in our brief the pretty case from the Sixth Circuit. Tennessee is one of the statutes. The pretty case decided that Tennessee was divisible. Michigan has two other burglary statutes in separate sections with separate punishments that apply to breaking and entry, including of a dwelling. They don't have the remaining in issue. So that would remain regardless of what you decided here. And then I think it would depend on how the divisibility analysis — What percentage of burglaries do you think are remaining in versus entry burglaries? So what we — one thing we know at the time of ACCA was that the New York burglary statute was very influential, and the commentaries to that burglary statute, which we cited in our reply brief, say explicitly that entry was the common — more common variant. Far more common, right? Yeah. Yeah. And I think that — that shows why the States would not have completely reframed their burglary statutes through the unacknowledged and unexplained addition of two words remaining in. But it shows — and this is an effect of Taylor, but the effects of adopting your position would be to knock out all burglaries from potentially 18 or more States as predicates. So I don't — so again, I think the relevant question is how many would have been knocked out at the time Congress enacted ACCA, since that, I think, is the fairest reading of Castleman and Stokeling. As of today, I think it depends on the divisibility analysis, and there are a number of jurisdictions of that 18 where I think it would be a litigated issue, and a number of jurisdictions that have other burglary statutes that aren't affected. So — Is there any way to tell, maybe there's not, among remaining in burglaries, what proportion of them are people who form their intent later versus form their intent at the moment of decision to remain? I'm not aware of a statistic on that front. I would say that the benefit of doing the 50-State survey gives you a sense of where that issue has been material, and you see it in the cases cited in our brief, where you either have somebody who, you know, was lawfully present, went into the bank or went into the store, or you have a situation where the authorization to enter was disputed, and so the prosecution will charge both. And often, the easier course, if you take the government's reading, is, well, don't worry about whether intent existed at the time of entry, because, you know, there was a commission of a misdemeanor or a crime while you're — It has to be — it has to be very unusual that someone enters a bank, and only then does it occur to them that that's where money is that they might want to rob. Well, I think the reason that the States adopted these remaining invariances is because you're right in the sense that what they were trying to get at was the person who came to the bank with that plan, and they were going to avoid having to break in because they could enter lawfully, and there was a sense that that person is a burglar, just like the one who actually breaks and enters. But I think that supports our view, because those are captured under both sides' tests, because that person has the intent at the time he — his presence in the bank becomes unlawful. What do you make of Taylor's definition of burglary, where the Court said that the contemporary meaning of burglary means at least the following — I'm sorry, contains at least the following elements, an unlawful or unprivileged entry into or remaining in a building or other structure with intent to commit a crime? How do you read — how can you read that consistent with your interpretation? I think the way the Eighth and Fifth Circuits and Seventh Circuits have, which is that you are, A, defining burglary, coming at it against the background of a common-law rule that everyone agrees, the government and us, had this contemporaneous intent requirement, and you're pairing remaining with entry, and everyone agrees entry is a point in time, so you have the contextual — you inform the meaning of remaining by context. And then you have remaining modified by the words with intent, and as the example is, I'm sorry. Yes, it's remaining — remaining with intent to commit a crime. Right. So where do we get the point of entry there? I think you get it — I'm sorry, the time of entry. Where do you — how do you read into that the requirement that the intent has to be present at the time of entry? Because you're reading remaining in the context of entry, and you are trying to define an offense of burglary at a time where 22 States unquestionably said you have to have intent at entry. What do you mean by — I'm sorry to interrupt. I'm sorry. What do you mean by context there? It says or, entry into or remaining in. Well, this Court in the Neal case that we cited in our reply brief has said when you have a pair of words, you know, a disjunctive pair of words, you look at one in the context of the other. And — But they're two distinct concepts, and at least I read Taylor as saying these two distinct concepts are ways you can fall within generic burglary. But they're two distinct concepts engaged in the effort of defining what burglary was in most States at that time. And I think if you read remaining in the continuous way that the government says, it all but eliminates the intent at entry requirement. I don't think that that's what Taylor would have done implicitly. And again, that's because — Although there were some States you acknowledge that supported the government's position at that time and that are cited in Lefebvre, which is cited right after this sentence in Taylor's, the Lefebvre Treatise. Correct. And Taylor acknowledged that its definition was not going to be perfect or was not going to be maximalist in the sense of capturing every single State. It gave some examples. The vending machine, California shoplifting is burglary, said there may be some States that are broader. But just to get back, the government's definition puts entry completely out of focus, as the Fifth Circuit says. And it makes entry the small minority view because every unlawful entry followed by formation of intent is burglary under their view. And I just think Taylor did not give an indication of changing, diverting that far. If you read Taylor as creating simply an empty vessel to be filled in as States decided, you know, whether they would expand their burglary statute, I don't — that's an odd way to read a criminal statute. I mean, what you say is an argument that one might make to a State legislature in defining burglary because the other definition can potentially catch some of these people who have less — less dangerous — where that individual crime has less dangerous characteristics. But under ACCA, the person has to have three prior convictions. And here your client has two prior convictions for assault with a deadly weapon. So this is just the third. So this is not a case where this definition is — is imposing a severe punishment on somebody who you might argue is less blameworthy. Isn't that right? Well, I think under — under the Court's categorical approach, the question is the statute, not the — not the conduct. And I don't think that the — the just needing three necessarily speaks to what the three needs. We cited in our reply brief, you know, there are certain populations that are subject to multiple, you know, low-level offenses. And so it might well get three, if I could reserve. Thank you, counsel. Counsel. Mr. Tripp. Mr. Chief Justice, and may it please the Court, petitioner's conviction here is a burglary conviction for purposes of ACCA. And if I could just make three or four points why that's right and try to simplify things a bit in response to the questioning. So first, I think you can really just begin and end with the text here. The statute says burglary. This Court has already held that that means any statute with these basic elements which include remaining with intent, and that's true regardless of the exact definition or label. And this is just what it means to remain in a place. You remain there as long as you stay. That's what this Court already held in Correz, the case about the alien crewman who remained in the United States unlawfully because he was still here. And that's also how this works in the law of trespass, which I think is really important here because it has this same pairing of to enter land or remain on land without permission. And the remaining prong for trespass is a continuing trespass. It's telling you that if you're on somebody else's land without their permission, it doesn't matter how you got there, how long you've been there, you're under a continuing obligation to leave. And I think the right way to understand the Taylor formulation and really what's happening in these State laws is aligning their burglary law with trespass. So that if there's a trespasser in your house or some other building or other structure like that, and they have the intent to commit the crime, that's what burglary is. And then I think another important point about the text here, right, is that Mr. Tripp, the formulation that Taylor used, and I agree it tends to support your position, but I mean, nobody could think that the person who was writing the Taylor opinion had this issue in mind at that point. So it's one of these things of the how do we read our own opinions, and do we read them like statutes, or do we read them a little bit differently, understanding what was and what wasn't in the mind of the court at that time? Right. And I think an important part is this next piece that I was about to get to where it says that the statutes just need to have these basic elements and that it doesn't matter how exactly they are defined and labeled. And so I think what it tells you is that when there's variation among the States, right, Congress was trying to cast a broad net. It was trying to pick up burglary statutes, the typical range of variation. And so when there's variation among the States about how do you define the remaining prong in their burglary statute and how long does it last, how does it interact with the intent prong in their burglary statute, it's still a burglary statute. It doesn't matter for purposes of Taylor. It's just too far down in the weeds. And I think — But then what do we do with a common law that has informed us? And I do understand that, in Taylor, we were very clear that burglary had evolved from the common law in dramatic ways, including the fact that most of the time burglary was limited to dwellings, and in more recent generations it's expanded to a break-in to any structure that people own. But still, your definition, your reading would be Congress intended to sweep in every statute that called itself burglary. Basically, that's what you're saying. They weren't looking at the common law. They weren't looking at the majority of states, which were — who defined it as just    And so, even if they were not there surreptitiously, they were talking about, they were thinking about everybody who remains without permission, even if they're not there surreptitiously. So I think there's a lot packed in there, a couple of responses. I mean, I think what Congress was trying to pick up was the typical range of burglary statutes in the states. So why isn't the typical the majority, the ones we're entering in? So the typical — even in 1986, most states had remaining in. Burglary. Twenty-nine states had it. It's undisputed. Most of them, 27 of them, it was almost verbatim. If I might on that, just to interrupt, I'm sorry, but just to get the playing field right. We have the 29, but then we have, I believe, about six where we have subsequent judicial decisions indicating that it required intent upon entry, some of which were later overturned by legislatures or whatever. And you're asking us to not pay attention to those six and use 29 rather than, I think it's 23, something like that. I might have — my number's not quite right, but it's slightly under half. And you ask us to ignore those subsequent decisions because they came after 1986. But we usually look at statutes and say judicial — later judicial decisions were interpreting as they were written at the time, retroactively. And they're not pieces of legislation that have prospective effects. So I'm not sure why we would ignore those six or whatever number of cases. It would be and take us down to 23 rather than 29. So I'm sorry for interrupting, but the premise of the entire discussion is it's 29. I guess I need some help on why that's the case. I think the answers sort of all get to the same place. And I think really our position is no matter how you look at this and how far you dig, you're going to get to the same answer. Right? So Taylor's formulation is — Well, I'm confident the government wants to win this case, no matter what. If I could just walk you through it — But if we could walk through 29 versus 23, why I should pay attention to one number rather than the other. So just — the Taylor formulation is enter or remain. Twenty-nine states had remain in burglary. And the overwhelming majority of them were almost verbatim that formulation, just enter or remain. Right? That's what they were saying. This is just what it means to remain in a place. Right? And so — and then if you were trying to figure out what is it that the states were doing, again, I think the first place you would look is their statutes. Their statutes just say remain. If you look at their judicial decisions in 1986, or imagine your Congress drafting this statute, literally every single judicial opinion that has ever — every single state that has ever resolved this timing question has read remain to mean remain. Read it literally to cover the entire time that you're trespassing. I mean, I just think that — Maybe you could get to my question at some point. Right. Why should I ignore those later judicial decisions? I guess I'm just looking for a reason why. I guess we're not — I'm not trying to count — so we're trying to put two different figures — trying to understand sort of two different points in time. One is what was Congress thinking in 1986? And I think if you're trying to approach this from the perspective of a legislator who's trying to understand what this is in 1986, the answer is the state of the law in 1986. The other thing that we're looking to just in this conversation is what would the effect of adopting Petitioner's ruling be? And there we have to look to the change in the law. Right? And I think they recognize this, that today the number is that there's 18 states that have — that read remain to mean remain, either in their case law or with statutes that have adopted that rule. And those states have a population of 130 million people. We're talking about tossing out an enormous number of burglary prosecutions. And I really want to emphasize how much this would be the tail wagging the dog. In response to Justice Kavanaugh's question, I mean, this is very clearly — I think if you look at these cases, this — Just — I'm sure the practical effects for the government are terrible and you don't want my sympathy, I'm sure, on any of that. But I guess you'd agree with me judicial decisions normally operate retroactively. I agree with you that, yeah, that ordinarily we understand the judicial opinion to reflect the state of the law as it existed at the time. I'm just trying to — And I guess I just — on a totally different tangent, we had some conversation last term in Stitt and Sims about how we approach these cases generally. And I guess I'm wondering whether the government's given any further thought to that. This approach of counting up states and then asking whether this statute matches the platonic ideal of burglary in 1986, according to however 50-state survey, it's not very popular with lower courts, to say the least. And it's not easy to do. And it's — one might also ask whether it's fair to — whether it puts anybody on fair notice what their conduct is if it is later dependent upon this mathematical exercise. So has the government considered about whether we should consider whether the states, if they call something burglary, whether that should be dispositive, for example? To my knowledge, we haven't changed our position on or adopted any sort of new thing on that. But I would say I think this case is honestly an opportunity to try to simplify things. That what you can just say here is that the Taylor formulation, it means what it says, right? That enter or remain, that's good enough. That it doesn't matter how exactly the states define these things. And there's disagreement among the states on all kinds of other subsidiary issues, right? What constitutes — what makes your presence unprivileged, whether it extends to the whole building or only part of it? What exactly constitutes an entry? And Petitioner has given you no logical stopping point. And the reason is because they're already way past it, right? Taylor says that the disagreement among the states about how to interpret these different elements, it just doesn't matter. There's still burglary statutes. I think that's really the heart of our submission here, that this is just too far down in the weeds. Taylor said substantially corresponds. Not exactly corresponds. Right. Right. And, again, if Congress had an extremely specific, you know, and especially this interpretation, an idiosyncratic and arcane and honestly pretty novel understanding of remaining that reflects no dictionary definition of the term, that Congress would have provided that definition, wouldn't have just said burglary. I'm sorry. It can't be idiosyncratic because a number of states have accepted it. As of 1986, you had a number of states who read it that way. You have the common law understanding that it was entry only and not remaining in. You have the use of surreptitious as a definition prior to the statute, which also has a sense of that you're surreptitious, that you're remaining in with the definition that you found to do something. So I'm not sure how you call it idiosyncratic. So I think it's idiosyncratic. Today it's still very much the minority position, this timing rule. As of 1986, we think the number was zero, that exactly zero states had adopted the timing rule. Petitioner is advocating. And I also just wanted to sort of take a step back and emphasize that, you know, the reason Congress, as Taylor says, Congress was focused on modern law enforcement concerns, not quote arcane distinctions that have little relevance to modern law enforcement concerns. And it's harder to think of a better description of this rule. I mean, you imagine being at home, woken at night from the sound of footsteps downstairs. You come downstairs and there's an intruder in your house who's stealing your television or worse is like intent on assaulting you. I just don't think anybody would care in that situation or would know whether the intruder developed that intent three seconds before or three seconds after breaking in. The timing just doesn't matter. What matters is there's an intruder in your house who's bent on stealing your television or assaulting you. I think another very powerful illustration of this. Do you think that it's a different reaction if you hear someone downstairs and they're in your pantry and you come down and they're stuffing their face with food? Do you think you're going to have the same reaction to that person than you had to the person walking away with your TV? Or somebody walking out of your house, you see they're empty-handed except they have a coat on now. They're clearly homeless. They're disheveled. They're unclean. Do you think your reaction is going to be the same to the person stealing your TV? I think that your reaction to those different situations would be very different, but it doesn't depend on the timing rule. It depends on the underlying facts. And I think the best illustration of this. I guess I'm sorry to interrupt again, but I'm stuck on a little something differently. I probably react badly to all of them myself. But I guess I'm wondering, though, those other crimes are bad, too. Nobody is here to defend entering without intent and then committing a crime with intent later.  But the question is whether it was burglary. And burglary is a very specific crime. And in common law, it did require intent upon entry. So calling it some arcane thing that is nuanced to the point where nobody cares is like asking us to ignore 1,000 years' worth of law and also possibly a majority of the jurisdictions in 1986. And so I guess that just perhaps there's a better argument than that it's too arcane. I want to be clear. We agree with the rule that the timing needs to be contemporaneous. You need to have the intent while you are remaining. Right? We also know that the whole point of the remaining prong was to eliminate the common law requirement that there be an entry. Right? The only thing it's doing in any of these statutes is eliminating that requirement. It was part and parcel of the states getting rid of the requirement that there be a break-in, that it be a dwelling, that it be at night, that it be with the intent to commit a felony. We also know that the states were not only focusing on the sort of surreptitious remaining type fact pattern because only a tiny number of the states actually required that. Most of them just said remaining. And I think the law to pick up on Justice Kagan's question from earlier, the law would sufficiently change by 1986 that the author of the opinion in Taylor knew enough to put remaining in. Yeah. And it's undisputed that remaining in is part of what Congress was trying to reach. Right. But the question, Mr. Tripp, is how the intent requirement figures in that. There was no question that Taylor says and that the remaining in was by then a known feature. But just as you said, the remaining in was really an attempt to close a loophole, if you will, in the entry and say, look, we have these cases that are coming up where the person is not entering unlawfully. The person is only remaining unlawfully. And so it was an attempt to close that loophole. But then the question that I think Mr. Marwell is raising is whether the intent to close that loophole suggests that there was also a desire to really shift the historic common law understanding of when the intent needed to develop. And he's suggesting, no, it was really just an attempt to close the small loophole, but you shouldn't read into that some much larger desire to shift the understanding of intent and when it arises. So a couple different responses to that. So first of all, I think this is actually not a very big shift because this timing question doesn't come up very much. There's still 11 states that have had remaining in burglary on the books for decades. The timing question is never, they don't have any case law on this. And then as for what the states were doing, as I was saying, we know that they were adding the remaining prong to eliminate the requirement that there be an entry. And we know that they were doing more than just picking up the guy who was staying behind and hiding in a store after hours so he could steal things inside because they weren't requiring that it be surreptitious. So then to figure out what is it that they were trying to do, I think really the natural way to understand that is to just read the text of their statutes. They say remain. This is just what it means to remain in a place, that you remain as long as you stay. If you want to dig deeper and look at the case law in the time in 1986, the case law was unanimous on this timing question in favor of reading that to just mean what it says. And so I think really, and then again to come back, Taylor focuses on, it says look, what the states were trying to do here is focusing on modern law enforcement concerns, right? And the concern, of course, is that there's a trespasser in your house or some other building or other structure like that and that he's intent on committing a crime. And again, I think it's really important that in many of these cases just nobody would care when the intent was formed. The problem is that there's the criminally minded trespasser, a very powerful illustration of this is the domestic violence situation which we talk about in our brief, which would be burglary under Petitioner's rule, right? If an ex-boyfriend goes to visit the ex-girlfriend, she lets him in and then they start to argue. She says, look, you need to get out of here. If at that moment he intends to assault her, that's burglary under Petitioner's rule because he remains with intent. But if he decides to assault her three or four seconds later, it's not. And just from the perspective of the victim who's being assaulted in her own home, by an unwelcome visitor, just what does it matter? Breyer. It's true, but we're trying to figure out something about the crime in general. In general, does it more likely to involve violence or not? So we have situation one where he intends to commit the crime inside the house either when he breaks in or when he first remains. Situation two, he doesn't form the intent to commit a crime until after he first breaks in or first unlawfully remains. Okay. Those are two situations. I would have always thought, I guess this is only the 50th time I've asked this question, but I would have always thought, you know, you could look up the cases on it and get an idea empirically. And then we'd have at least something to go on, even if they were only appellate cases. Has anyone ever done that? I think, honestly, the cases that are cited in these briefs do that. And they tell you, they paint a pretty powerful picture. I urge you to read a lot of them. It's true, some of them are minor. I only read so many. Some of these are very significant. And I get help from my law clerks. Many of these are very significant crimes. I want to be clear that the situation I was talking about of somebody coming in and then later seeing a woman inside, he decides to assault, the domestic violence situation I was talking about, these are not hypotheticals. These are the facts of Grattan out of Alabama, of Denoyer out of South Dakota, of Fontas out of Ohio. That's the seeing a woman after you break in. The domestic violence one, Bratty out of Florida. You know, and a lot of these are very, very serious crimes. And I think they illustrate that what these people are engaged in is very erratic and impulsive decision-making, right? That they've, they already decided to break into somebody's house. And then they make an impulsive, or to be in a place where they're not supposed to be and not leave. And then they make a decision to engage in some other further conduct. I think in many cases it's really very, very serious. It's true there are some that are much more minor, like Gaines, the facts of that. But again, what makes that sympathetic is not the timing. It's that it's a homeless guy who's cold, right? And you could have that same homeless guy, you know, in Buffalo. It's snowing. It's very, very cold. He's walking down the street. He looks in the window and he sees a coat. And so he breaks in. He grabs the coat and he goes. That's burglary under their rule, even though it's just equally sympathetic. What makes it sympathetic are not, are the facts of the underlying case, not the timing rule that he's urging here. Kagan. I'm not sure whether this is here nor there, but, you know, some of the serious crimes that you just mentioned, and they are extremely serious. If you went out on the street and asked 100 people whether those assault cases are burglary, you would get 100 no answers. Does that matter? I think the place where that instinct is most powerful is for the domestic violence situation where I agree that that is like, it feels intuitively different. And I think this was really what drove the drafters of the model penal code and since there's some language in Lefebvre to say you shouldn't have remaining in burglary. And if you do at all, it should be surreptitious. And I think really the short answer is that the states didn't buy it. The states just didn't do that. They didn't limit it to surreptitious remaining. The majority of them adopted remaining statutes. Even more of them have it today. And so I think basically the states have recognized that there's something really much more fundamental here. It's not about the nature of the intrusion. It's about the fact that there's an unwelcome visitor, somebody in your home. It's about the safety and security of a person in their own home or in some other space like that from an unwelcome visitor who's bent on committing some kind of crime. And I think the fact that a lot of these are actually, I mean, a lot of these are really very, very serious crimes when the timing question does come up. Are, and a certain amount, a lot. Aren't, has the department ever thought, you don't have to answer this, but has the department ever thought of recommending to Congress a change so that instead of looking at the generic crime where the answer's going to be sometimes yes, sometimes no, there's violence, but saying look and see whether the person on the individual occasion committed a violent act. Have they ever thought of that? And if they say no, we're not going to do that. I mean, I'm sure people have thought of it, but to my knowledge, the department hasn't proposed any affirmative legislation on this. I know there's legislation that's pending on the Hill about this that the department is providing technical assistance on. But beyond that, I'm not sure I know. Can I ask the same question that I asked the other side, which is in the universe of burglaries, do you have a sense of how many are remaining in? My sense is that it's pretty rare, that it's pretty few, that in the overwhelming number of burglary cases, you're going to have evidence of an unlawful entry. And then that's just how you prove it up, and that becomes the whole case. And I guess actually this gets at to this idea that our reading of remaining makes that prong more important than the entry prong. And I think really our response is that it doesn't matter, right, that if you look at the law of trespass, it has the same pairing of to enter or remain. And I don't think anybody cares whether one of those is more important than the other or whether many entry trespasses bleed into remaining trespasses. They're covering the waterfront of a trespass, and I think it's the same here. And if you were to lose this case, potentially all burglaries, from how many states would no longer be able to be counted as? Yeah, it would be 18 states and counting. So there's 18 states with a population of 130 million today. There's another 11 that still haven't addressed this issue. And assuming that the current trends continue, probably more of them will read remain to mean remains. Well, may I ask you the same question I asked Mr. Marwell, which is how many of those states have other burglary statutes that you could capture, can I say, real burglary in? I prefer not the real burglary, but yeah, I think there's a mix. I think 10 of these states have adopted this rule by statute, but I don't know how much the different ones are used relative to each other. But you'd still be tossing out an enormous number of burglary prosecutions, including from Michigan, Texas, some very big states. And then I think another critical point, again, is that Petitioner has given you no logical stopping point, right? It cannot end here. If you think that it gets at this level of specificity, then why not all the other disputes about, you know, what it constitutes to be unprivileged, what exactly an entry is, and on and on and on. And I think what it really gets to is that, right? If the intent to enter isn't critical, how about the act of what's done once inside? If the mens rea isn't, if that's too minor to care about, and we're going to just turn every former common law larceny into a burglary, which is what you're asking us to do in some ways, because a lot of the other conduct would be larceny. It's not like it would be unpunished at common law. Why should we care about the actus reis? And so why does it have to be taking things to be burglary? Couldn't it maybe also conducting fraud while they're inside? California defines burglary to be almost as expansive as that. So perhaps that's equally consistent with your argument, logically. It's equally consistent with petitioners as well, because it covers any crime. That's not covered. We agree that there has to be mens rea, right? You have to know that you're unlawfully inside the place that you're trespassing, and we agree that you need to have intent while you're doing that. The only dispute here is do you need to have intent only at the initial second? I understand. Right? That's just the time in. But if that's too minor to care about, then why should we care about these other things, too, that were also part of common law burglary? I think part of the answer is that remains, first of all, the Taylor formulation and what the overwhelming majority of States are doing. They are saying that you need to unlawfully enter or remain in a building or structure with intent to commit a crime. That's what these statutes say. I think if you flip through them, you'll see that many of them are very hard. So it isn't that it's too minor. It comes back to counting again. And then we're just back down to 29 versus 23, and we have to decide. I think it's not just about it being minor, and it's not just about counting. I think what the States have recognized is that the core of this offense are not these kind of questions from the common law about did you break and did you enter? It's is there a trespasser in your home who's intent on committing a crime? If there is, he's a burglar. I think that's really what the States are boiling it down to. That's the modern offense. Any crime. Any crime. That's what Taylor says. He agrees with that. Petitioner would agree that if the person is breaking into a house at night with the intent to commit stock fraud on his phone, I don't know if that would ever happen. But, yeah, that's burglary under either of the rules here. And I guess also just to try and take one step back in response to some of the questions, if you're going to have a categorical approach to this statute that doesn't look to the facts of the individual case, you need to have a broad definition of the category. Otherwise, if you have a very specific laundry list, a long list of things that every statute needs to match perfectly, all you're going to do is be knocking them out one after another after another until there's really nothing left. And I think it would really defeat the purpose of Congress in including burglary among an act of predicate. I guess maybe just one last point here. The statute here, this is a home invasion statute. I think most people would think that this is the heart of modern burglary. And I think if you told the drafters in Congress, you know, imagine a person who you think should fit within the ACCA, it would be somebody with a track record that looks an awful lot like Petitioner's. So if there's no further questions, we're asking the Court to affirm. Roberts. Thank you, counsel. Mr. Marwell, four minutes remaining. Thank you. On the bad cases that the government, the facts that the government alleges, there's no dispute that those are crimes. The question is, are they burglary? They may be trespass, they may be assault, and they'd be punished separately. But Congress used the word burglary. And I think the reason that we're here is that there's some incongruity between the government's account of generic burglary and these cases that just don't feel like burglary. And that's why the Fifth Circuit, the Seventh Circuit, have held that Taylor is not clear on its face, doesn't resolve the issue. I think it's worth reminding that less than a year before Taylor, the New York Court of Appeals interpreted that State's remaining in statute the way we say. That statute we know from Colorado and other States was a model for other States' laws. And I think it helps explain what the Court may have been getting at in Taylor. The government focuses heavily on trespass and the fact that remaining has a continuous sense in that law. I think that's the fundamental problem with their position, is that they're equating trespass and burglary, and we need some line we suggest should be drawn from the common law and State practice that distinguishes those two crimes. On the concern about simplicity or a slippery slope, I would submit that Taylor provides you an administrable and workable rule. Looking to what States did in 1986 is an objective foundation. It's a point in time, and there isn't actually that much dispute between the parties about what State law was. It's just a dispute about what inferences or what conclusions to draw. If you walk away from that approach, I think you're left with the difficult questions of what is and what isn't risky in a particular consequence. And the government, I think, has not asked you to revisit Taylor in this case. As to whether this issue is a big deal, I think it is a big deal, because the government can just charge entry or remaining, and it essentially makes the long-standing traditional rule of intent at entry disappear in all but the very small number of cases that the government identifies, such as a fleeting entry or an interrupted entry. And we don't see in evidence in Taylor that there was intent to make that big a change. If this does become a problem, obviously the Department is well positioned to ask Congress to fix it. And if there are no further questions, we would suggest that a call to simplicity doesn't justify overlooking hundreds of years under which the essence of burglary has been somebody who trespasses for the purpose of committing a crime. Thank you, Counsel. The case is submitted.